IN THE MATTER OF: STATE OF NORTH CAROLINA, EX REL. EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA, APPELLEE v. DAVID R. HOPKINS, JR., APPELLANT

No. 9218SC368

(Filed 3 August 1993)

Labor and Employment § 137 (NCI4th) — seasonal alien agricultural workers — unemployment taxes required of employer

An employer must pay unemployment taxes on his alien farm workers who are Seasonal Agricultural Workers admitted to the United States under 8 U.S.C. § 1160 (Supp. 1993).

Am Jur 2d, Unemployment Compensation §§ 19 et seq.

Appeal by employer from judgment entered 27 December 1991 by Judge Peter M. McHugh in Guilford County Superior Court. Heard in the Court of Appeals 11 March 1993.

*T.S. Whitaker and C. Coleman Billingsley, Jr., for appellee.*

*Max D. Ballinger for appellant.*

LEWIS, Judge.

David R. Hopkins, Jr., employs non-resident alien farm workers as well as several U.S. workers on his Guilford County tobacco farm. In 1988 Hopkins contacted the Employment Security Commission (hereafter "ESC") office in Greensboro and inquired as to whether or not he owed state unemployment taxes for those quarters of 1987 in which his payroll exceeded $20,000. *See* N.C.G.S.

§ 96-8(5)n. (1991). An ESC field auditor determined that he did owe unemployment taxes in 1987, and assessed his tax liability along with interest and penalties. Hopkins paid the tax and interest under protest, objecting to the payment of state unemployment taxes on that portion of the wages earned by alien farm workers. The ESC held hearings on the matter and affirmed Hopkins' tax liability. Hopkins now appeals from the Order of the Superior Court affirming the decision of the ESC.

This case involves two classifications of alien agricultural workers set forth in the Immigration and Nationality Act (INA): "H-2A" workers and "SAW" workers. The term "H-2A" refers to alien workers admitted under 8 U.S.C. § 1101(15)(H)(ii)(a), which provides:

> (15) The term "immigrant" means every alien except an alien who is within one of the following classes of nonimmigrant aliens —
>
>> (H) an alien . . . (ii)(a) having a residence in a foreign country which he has no intention of abandoning who is coming temporarily to the United States to perform agricultural labor or services . . . of a temporary or seasonal nature . . .

8 U.S.C. § 1101(15)(H)(ii)(a) (Supp. 1993). An employer must petition the Attorney General for permission to import an alien as a nonimmigrant under section 1101(a)(15)(H), according to 8 U.S.C. § 1184(c) (Supp. 1993). H-2A workers are not entitled to permanent resident status, and may remain in the U.S. only for the duration of their particular job. See Wint v. Yeutter, 902 F.2d 76, 78 (D.C. Cir. 1990).

The term "SAW" stands for Seasonal Agricultural Worker and refers to workers admitted under 8 U.S.C. § 1160 (Supp. 1993). A worker is eligible for SAW status if he applied within 18 months of 1 June 1987 and showed that he resided in the U.S. and performed seasonal agricultural work for at least 90 days between 1 May 1985 and 1 May 1986. A worker with SAW status is lawfully admitted for temporary residence until the expiration date listed, and may later seek permanent residence. According to Hopkins, the SAW program was enacted to supplement the H-2A program.

Each of the alien farm workers employed by Hopkins has been issued an Employment Authorization Card I-688A, which is valid for six months and issued to those seeking SAW status. 8 U.S.C.

IN RE STATE ex rel. EMPLOYMENT SECURITY COMM. v. HOPKINS

[111 N.C. App. 437 (1993)]

§§ 1160, 1324a. Some have also been issued a Temporary Residence Card I-688, which confers SAW status. None of Hopkins' workers were H-2A workers.

Hopkins argues he should not be required to pay state unemployment taxes on his SAW workers for several reasons. He argues that the Federal Unemployment Tax Act does not require contributions on sums paid to alien farm workers with SAW status, that the North Carolina provisions parallel the federal act, and that therefore the tax should not be owed in North Carolina. Also, he contends he should not owe such taxes for SAW workers, because they are not eligible to receive unemployment insurance benefits under North Carolina law. Additionally, Hopkins argues that his SAW workers are really the functional equivalent of H-2A workers, who are exempted from unemployment tax liability in North Carolina.

The North Carolina unemployment insurance provisions are found in Chapter 96 of the North Carolina General Statutes. It is undisputed that Hopkins meets the definition of "employer" for the purposes of Chapter 96, because he paid over $20,000 in wages during several quarters in 1987. N.C.G.S. § 96-8(5)n. (1991). Also, the services provided by the alien workers in this case meet the statutory definition of "employment," because they provide agricultural labor and because their employer paid over $20,000 in wages during a calendar quarter. § 96-8(5)n.(a).

The controversy in this case arises because Chapter 96 contains an exception from its unemployment insurance requirements for H-2A workers. Those workers are excluded from the definition of employment as follows:

> Provided, such labor is not agricultural labor performed before January 1, 1993, by an individual who is an alien admitted to the United States to perform agricultural labor pursuant to sections 214(c) and 101(a)(15)(H) of the Immigration and Nationality Act.

§ 96-8(6)g. There is no listed exception for alien workers with SAW status.

Although the North Carolina statute contains no exception for SAW workers, Hopkins contends that in adopting the federal provisions on unemployment taxation and insurance, our legislature intended the state act to be applied in exactly the same manner as the federal act. Notwithstanding the treatment of SAW workers

under the federal act, we are governed by the provisions of the North Carolina act, which clearly provides an exception only for H-2A workers. We reject the argument that we must apply our act exactly as the federal act. *See Unemployment Compensation Comm'n v. National Life Ins. Co.*, 219 N.C. 576, 14 S.E.2d 689 (1941). If our legislature intends that SAW workers as well as H-2A workers be exempt from unemployment contributions, they must make that decision and enact the statutory change.

Hopkins also argues that he should not owe unemployment taxes for SAW workers because they are not eligible to receive unemployment insurance benefits. However, we note that such workers are eligible for benefits. Section 96-13(f), as it existed in 1987, provided that

> [b]enefits shall not be payable on the basis of services performed by an alien unless such alien is an individual who has been lawfully admitted for permanent residence or otherwise is permanently residing in the United States under color of law or was lawfully present for purposes of performing such services . . . .

§ 96-13(f) (1985) (amended 1991). According to this provision, an alien is eligible for benefits if he was: (1) lawfully admitted for permanent residence; (2) permanently residing in the U.S. under color of law; or (3) lawfully present for the purpose of performing such services. SAW workers satisfy the third requirement listed in the statute, and are therefore eligible to receive benefits.

Finally, Hopkins argues that his workers have attained de facto H-2A status and should therefore be excluded from the definition of employment in Chapter 96. Regardless of the fact that the SAW program supplements the H-2A program, the statute clearly exempts only H-2A workers.

We find no support for Hopkins' arguments, and therefore affirm the Superior Court. We hold that an employer must pay unemployment taxes on his alien farm workers with SAW status. Any changes or additions to section 96-8(6) must be made by the legislature, not by the courts.

Affirmed.

Judges JOHNSON and JOHN concur.